Richard Smith, WSBA # 21788
Alyssa Englebrecht, WSBA #46773
Meredith Crafton, WSBA # 46558
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE,              )
                                         )
            Plaintiff,                   )        COMPLAINT
                  v.                     )
                                         )
ASH GROVE CEMENT COMPANY,                )
                                         )
            Defendant.                   )
                                         )
_____  )

## I.     INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act

("CWA") as amended, 33 U.S.C. § 1365.  Plaintiff Puget Soundkeeper Alliance ("Soundkeeper")

seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of

costs, including attorneys' and expert witness fees, for Defendant Ash Grove Cement Company's

("Ash Grove") violations of "effluent standards or limitations" under 33 U.S.C. § 1365(a)(1),

(f)(1) (unpermitted discharge in violation of the 33 U.S.C. § 1311(a) prohibition), and (f)(7)

(violation of a National Pollutant Discharge Elimination System ("NPDES") permit or

conditions thereof).

COMPLAINT - 1

## II.     JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).  The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3.      In accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified Ash Grove of Ash Grove's violations of the CWA and Soundkeeper's intent to sue under the CWA by letter dated and postmarked June 16, 2020 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as Exhibit 1.  The allegations in the Notice Letter are incorporated herein by this reference.  In accordance with 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper provided copies of the Notice Letter to Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") by mailing copies to these individuals on June 16, 2020.

4.      More than sixty (60) days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.      The violations complained of in the Notice Letter are continuing or are reasonably likely to re-occur.  Ash Grove is in violation of the CWA.

6.      Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

7.      The source of the violations complained of is in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

COMPLAINT - 2

### III.   PARTIES

8.      Soundkeeper brings this complaint on behalf of itself and its member(s). Soundkeeper is a non-profit corporation organized under the laws of the State of Washington. Soundkeeper is a membership organization and has at least one member who is injured by Ash Grove's violations.  Soundkeeper is dedicated to protecting and preserving Puget Sound by tracking down and stopping the discharge of toxic pollutants into its waters.

9.      Soundkeeper has representational standing to bring this action.  Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Ash Grove's facility, on water quality and aquatic species and wildlife that Soundkeeper's members observe, study, and enjoy.  Soundkeeper's members are further concerned about the effects of discharges from Ash Grove's facility on human health.  In addition, discharges from Ash Grove's facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas.  Soundkeeper has many members who live, work, fish, and recreate in and on the Duwamish River, Elliott Bay, and Puget Sound, all of which are affected by Ash Grove's discharges.  Soundkeeper's members' concerns about the effects of Ash Grove's discharges are aggravated by Ash Grove's failure to record and report information about its discharges and pollution controls in a timely manner.  The recreational, scientific, economic, aesthetic, cultural, spiritual, and/or health interests of Soundkeeper and its members have been, are being, and will be adversely affected by Ash Grove's violations of the CWA.  The relief sought in this lawsuit can redress the injuries to these interests.

10.     Soundkeeper has organizational standing to bring this action.  Soundkeeper has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of western Washington, including the Duwamish River, Elliott Bay, and other parts of Puget Sound.  As detailed herein

COMPLAINT - 3

and in the Notice Letter, Ash Grove has failed to comply with numerous requirements of its NPDES individual permit including monitoring, recordkeeping, reporting and planning requirements.  As a result, Soundkeeper is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Soundkeeper's efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members, are also precluded.  Finally, Soundkeeper and the public are deprived of information that influences members of the public to become members of Soundkeeper, thereby reducing Soundkeeper's membership numbers.  Thus, Soundkeeper's organizational interests have been adversely affected by Ash Grove's violations.  These injuries are fairly traceable to Ash Grove's violations and are redressable by the Court.

11.     Ash Grove is a corporation authorized to conduct business under the laws of the State of Washington and is incorporated under the laws of the State of Washington.

12.     Ash Grove owns and operates a cement production facility located at or about 3801 E Marginal Way S, Seattle, WA 98134 (the "facility").

## IV.     LEGAL BACKGROUND

13.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person unless in compliance with the provisions of the CWA.  Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, the terms of a NPDES individual permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14.     The State of Washington has established a federally approved state NPDES program administered by the WDOE.  Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220.  This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

COMPLAINT - 4

15.     The WDOE issued Ash Grove an NPDES individual permit (WA0032221) under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), on April 30, 2010, effective June 1, 2010, modified on October 25, 2012 and set to expire on May 31, 2015 (the "2010 Permit"). WDOE granted subsequent coverage under an individual NPDES Permit, issued on August 17, 2016, effective October 1, 2016, modified on December 15, 2016 and set to expire on September 30, 2021 (the "2016 Permit") (together with the 2010 Permit, "Permits") under the same permit number, WA0032221. The Permits authorize Ash Grove to discharge stormwater and pollutants contained in the stormwater to the waters of the State subject to certain terms and conditions.

16.     The Permits impose certain terms and conditions on Ash Grove including requiring monitoring and sampling of discharges, requiring reporting and recordkeeping, and restricting the quantity of pollutants discharged from the facility.  To reduce and eliminate pollutant concentrations in stormwater, the Permits require, among other things, that Ash Grove meet numeric effluent limits for pollutant concentrations in its stormwater discharges, develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges.  The specific terms and conditions of the Permits are described in detail in the Notice Letter and incorporated herein by reference.  *See* Exhibit 1.

### V.     FACTS

17.     Ash Grove filed applications with the WDOE for NPDES Permit coverage. WDOE issued Ash Grove the 2010 Permit under permit number, WA0032221, on April 30, 2010, effective June 1, 2010, modified on October 25, 2012 and set to expire on May 31, 2015. WDOE granted subsequent coverage under the 2016 Permit, on August 17, 2016, effective October 1, 2016, modified on December 15, 2016 and set to expire on September 30, 2021 under the same permit number, WA0032221.

COMPLAINT - 5

18.     Ash Grove's facility discharges pollutants, including but not limited to stormwater associated with industrial activity, to the Duwamish River, which flows to Elliott Bay and Puget Sound.

19.     Ash Grove is engaged in industrial activity at its approximately 18.5-acre cement production facility, which is primarily paved. Ash Grove's facility has miles of stormwater collection pipes and at least one named outfall as well as numerous unmonitored discharge points from the facility's wharf and dock areas that discharge stormwater and other pollutants to the Duwamish River.

20.     Ash Grove has violated the Permits and Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging pollutants not in compliance with an NPDES permit.  Ash Grove's violations of the Permits and the CWA are set forth in sections I through VI of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.  In particular and among the other violations described in the Notice Letter, Ash Grove has violated its Permit by failing to meet the numeric effluent limits for various pollutants, contributing to violations of water quality standards, failing to implement BMPs to control stormwater quality, failing to implement AKART, failing to timely submit complete and accurate reports, and failing to prevent illicit and unpermitted discharges from occurring.

21.     Condition S1.A. of the 2016 Permit establishes numeric effluent limitations on Ash Grove's discharges to which prohibit discharges in excess of these limits.  The 2016 Permit prohibits discharges with daily maximum concentrations of TSS in excess of 10 mg/L, average monthly concentrations of copper in excess of 12.8 μg/L, daily maximum concentrations of copper in excess of 21.7 μg/L, and a pH level outside the range of 6-9. Ash Grove has discharged stormwater containing levels of pollutants that exceed the numeric effluent limitations established by the 2016 Permit, including on the days on which Ash Grove collected samples

COMPLAINT - 6

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

with the results identified in Table 1 below, and is likely to continue discharging comparably unacceptable stormwater.

**Table 1 – Effluent Limit Violations**

| Month and year in which sample was collected | Daily maximum TSS concentration (effluent limit 10 mg/L) | Average monthly concentration of total copper (effluent limit 12.8 µg/L) | Daily maximum total copper concentration (effluent limit 21.7 µg/L) | pH (effluent limit minimum of 6.0 maximum of 9.0 standard units) |
|---|---|---|---|---|
| November 2018 | **11** | | | **3.17** |
| March 2019 | **11** | **13.4** | | |
| June 2019 | | **33.8** | **33.8** | |
| September 2019 | | **21.6** | | |
| November 2019 | | **29.2** | **29.2** | |

22.     The stormwater monitoring data provided in Table 1 shows effluent limit violations included in the stormwater monitoring results that Ash Grove has submitted to WDOE.

23.     Ash Grove's stormwater discharges that violate the 2016 Permit effluent limits are also violations of State water quality standards.  Discharges from Ash Grove's facility contribute to the polluted conditions of the waters of the State, especially the water quality standards of the Duwamish River and Elliott Bay due to their proximity to the Ash Grove facility.  Discharges from Ash Grove's facility contribute to harmful ecological impacts that result from the pollution of these waters and to Soundkeeper and its members' injuries resulting therefrom. Statutory and Permit requirements and Ash Grove's violations thereof are described in detail in Section I of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

24.     Condition S10.A of the 2010 Permit and Condition S9.A of the 2016 Permit require Ash Grove to update, implement, and comply with a SWPPP as specified. The SWPPP

COMPLAINT - 7

must be consistent with the Stormwater Management Manual for Western Washington

("SWMMWW").  The SWPPP must also indicate the BMPs necessary to achieve AKART and

ensure that discharges do not cause or contribute to violations of water quality standards.  Ash

Grove not only failed to prepare and implement a SWPPP consistent with the Permits'

requirements and/or with the SWMMWW, but also failed to specify and implement AKART and

failed to ensure discharges do not cause or contribute to violations of water quality standards.

These violations of Permit Condition S9.A of the 2016 Permit are ongoing.  These requirements

and Ash Grove's violations thereof are described in detail in section II of the Notice Letter,

attached hereto as Exhibit 1, and are incorporated herein by this reference.

25.      Ash Grove's exceedances of the effluent limits set by the Permits indicate that

Ash Grove is failing to apply AKART to its discharges and/or is failing to implement an

adequate SWPPP and BMPs.  Ash Grove violated the Permits by not developing, modifying,

and/or implementing BMPs and a SWPPP in accordance with the requirements of the Permits,

and/or by not applying AKART to discharges from the facility.  These requirements and Ash

Grove's violations thereof are described in detail in sections I and II of the Notice Letter,

attached hereto as Exhibit 1, and are incorporated herein by this reference.

26.      Ash Grove has violated the monitoring requirements of the Permits.  The

monitoring requirements and Ash Grove's violations thereof are described in Section III of the

Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

27.      Condition S3.A.8 of the 2016 Permit requires Ash Grove to submit monthly

discharge monitoring reports (DMRs) by the 28th day of the following month and quarterly

DMRs by the 28th of the month following the monitoring period.  Ash Grove has violated these

conditions by failing to submit a monthly DMR within the time prescribed for December 2017

COMPLAINT - 8

1    and February 2019 and failing to submit a quarterly DMR within the time prescribed for the

2    fourth quarter of 2017.

3         28.     Ash Grove has violated recordkeeping requirements of the Permits.  The

4    monitoring requirements and Ash Grove's violations thereof are described in Section IV of the

5    Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

6         29.     The Permits prohibit illicit discharges by Ash Grove. Ash Grove discharges

7    materials from the overwater portions of the facility including the docks, conveyors and

8    associated machinery, and wharf areas directly to the Duwamish River in violation of these

9    Permit conditions.  The materials being discharged from these areas may include but are not

10   limited to raw materials, dirt, dust, solid waste, petroleum coke, coal, smelter slag, vanillin black

11   liquor solids, fly ash, crushed limestone, clay, sand, gravel, and iron ore.  Ash Grove has directly

12   discharged these pollutants to the Duwamish River in violation of the Permits each and every

13   time it has loaded or unloaded materials from a vessel or barge over the last five years (which

14   dates are known to Ash Grove), and these discharges are reasonably likely to continue to occur.

15   These requirements of the Permits and Ash Grove's illicit discharges are described in section

16   V.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this

17   reference.

18        30.     Illicit discharges by Ash Grove are a violation of section 301 of the CWA, 33

19   U.S.C. § 1311.  The Permits authorize only the discharges of stormwater and specific pollutants

20   contained in stormwater.  Ash Grove has violated section 301 of the CWA, 33 U.S.C. § 1311,

21   each day upon which an illicit discharge has occurred during the last five years.  These

22   requirements and Ash Grove's violations are described in section V.B of the Notice Letter,

23   attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

24

COMPLAINT - 9

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

31.     The portion of the Duwamish River directly adjacent to the facility's docks and wharf does not meet water quality standards (including sediment quality standards) for bioassay and is included on Washington State's 303(d) list of impaired waterbodies (i.e., waterbodies acknowledged to be in violation of specific applicable water quality criteria).

32.     Ash Grove's direct discharges of materials from the overwater portions of the facility including the docks, conveyors and associated machinery, and wharf areas cause and/or contribute to violations of water quality standards (including sediment quality standards) for sediment bioassay, violations of aquatic life criteria, violations of the secondary contact recreational criteria, violations of the wildlife habitat criteria, violations of the harvesting criteria, violations of the commerce and navigation criteria, violations of the boating criteria, as well as violations of the aesthetic criteria due to the presence of turbid and toxic discharges from the facility that offend the senses of sight, smell and touch.  These requirements and Ash Grove's violations thereof are described in detail in section V.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference.

33.     Each of Ash Grove's violations of the Permit and the CWA are ongoing in that they are currently continuing or are likely to reoccur at least intermittently in the future.

34.     A significant penalty should be imposed against Ash Grove under the penalty factors set forth in 33 U.S.C. § 1319(d).

35.     Ash Grove's violations were avoidable had Ash Grove been diligent in abiding by the Permits' requirements and deadlines, and in overseeing facility operations and maintenance.

36.     Ash Grove benefited economically because of its violations and failure to implement improvements at the facility.

COMPLAINT - 10

37.     Ash Grove's violations caused and contributed to pollution in the receiving water, which may be ameliorated by an order from the Court requiring remediation, clean up, and monitoring.

## VI.     FIRST CAUSE OF ACTION

38.     The preceding paragraphs and the allegations in sections I through VI of the Notice Letter, attached hereto as <u>Exhibit 1</u>, are incorporated herein.

39.     Ash Grove's violations of its NPDES permits described herein and in the Notice Letter constitute violations of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

40.     The violations committed by Ash Grove are ongoing in that they are presently continuing or are reasonably likely to reoccur at least intermittently.  Any and all additional violations of the Permits and the CWA which occur after those described in Soundkeeper's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

41.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Ash Grove is likely to continue to violate the Permits and the CWA to the further injury of Soundkeeper, its members, and others.

## VII.     SECOND CAUSE OF ACTION

42.     The preceding paragraphs and the allegations in sections I through VI of the Notice Letter, attached hereto as <u>Exhibit 1</u>, are incorporated herein.

43.     Ash Grove's unpermitted discharges described herein and in the Notice Letter, constitute violations of Sections 301(a) of the CWA, 33 U.S.C. §§ 1311(a), and are thus violations of "effluent standards and limitations" under 33 U.S.C. 1365(f).

COMPLAINT - 11

44.     The violations committed by Ash Grove are ongoing or are reasonably likely to continue to occur.  Any and all additional violations of section 301(a) of the CWA which occur after those described in Soundkeeper's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

45.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Ash Grove is likely to continue to violate section 301(a) of the CWA to the further injury of Soundkeeper, its members, and others.

46.     A copy of this Complaint will be served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VIII.   RELIEF REQUESTED

Soundkeeper respectfully requests that this Court grant the following relief:

A.      Issue a declaratory judgement that Ash Grove has violated and continues to be in violation of the Permits;

B.      Issue a declaratory judgment that Ash Grove has been discharging pollutants from point sources at the facility without a permit in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a) for at least the past five years;

C.      Enjoin Ash Grove from operating the facility in a manner that results in further violations of the Permits or the CWA;

D.      Order Ash Grove to immediately implement a plan for achieving compliance with the CWA and provide Soundkeeper with a copy of this plan;

E.      Order Ash Grove to immediately implement a SWPPP that is in compliance with the 2016 Permit;

F.      Order Ash Grove to provide Soundkeeper, for a period beginning on the date of the Court's Order and running for five years after Ash Grove achieves compliance with all of the

COMPLAINT - 12

conditions of the Permits, with copies of all reports and other documents which Ash Grove submits to the USEPA or to the WDOE regarding Ash Grove coverage under the Permits at the time those documents are submitted to these agencies;

G.      Order Ash Grove to take specific actions to remediate the environmental harm caused by its violations;

H.      Order Ash Grove to abate unpermitted discharges from its facility until Ash Grove obtains a permit for such discharges or until such discharges are eliminated;

G.      Grant such other preliminary and/or permanent injunctive relief as Soundkeeper may from time to time request during the pendency of this case;

H.      Order Ash grove to pay civil penalties of $37,500.00 per day of violation for each violation committed by Ash Grove through November 2, 2015 and to pay $55,800 per day of violation for each violation committed by Ash Grove after November 2, 2015 pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

I.      Award Soundkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

J.      Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 31st day of August, 2020.

SMITH & LOWNEY, PLLC

By: *s/Richard Smith*
       Richard Smith, WSBA # 21788
By: *s/Meredith Crafton*
       Meredith Crafton, WSBA # 46558
By: *s/Alyssa Englebrecht*
       Alyssa Englebrecht, WSBA #46773
       2317 E. John Street, Seattle, WA 98112
       Tel: (206) 860-2883; Fax: (206) 860-4187

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Email: richard@smithandlowney.com,
meredith@smithandlowney.com,
alyssa@smithandlowney.com

*Attorneys for Plaintiff Puget Soundkeeper Alliance*

COMPLAINT - 14

**Exhibit 1**

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

June 16, 2020

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Ash Grove Cement West
3801 East Marginal Way S.
Seattle, WA 98134

Managing Agent
Ash Grove Cement Company
11011 Cody St
Overland Park, KS 66210-1313

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002.  Any response or correspondence related to this matter should be directed to us at the letterhead address.  This letter provides Ash Grove Cement West ("Ash Grove") with 60 days' notice of Soundkeeper's intent to file a citizen suit against Ash Grove under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations of effluent standards and limitations described below.  These violations continue to occur at the Ash Grove facility, an approximately 18.5-acre cement production facility located at or about 3801 E Marginal Way S, Seattle, WA 98134 (the "facility"), which discharges pollutants from point sources including the facility's designated stormwater discharge point to the Duwamish River and into Puget Sound at Elliott Bay in Seattle.

Soundkeeper asserts violations of "effluent standards or limitations" under 33 U.S.C. § 1365(a)(1), (f)(1) (unpermitted discharge in violation of the 33 U.S.C. § 1311(a) prohibition), and (f)(7) (violation of a National Pollutant Discharge Elimination System ("NPDES") permit or conditions thereof).  The Washington State Department of Ecology ("Ecology") granted Ash Grove an individual NPDES permit for discharges of stormwater from the facility, issued on April 30, 2010, effective June 1, 2010, modified on October 25, 2012 and set to expire on May 31, 2015, under NPDES Permit No. WA0032221 (the "2010 Permit").  Ecology granted subsequent coverage under an individual NPDES Pemit, issued on August 17, 2016, effective October 1, 2016, modified on December 15, 2016 and set to expire on September 30, 2021 (the "2016 Permit") under the same permit number, WA0032221. All violations alleged herein are continuing or likely to re-occur.

## I.      Effluent Limit Violations

Condition S1.A of the Permits requires that stormwater discharges must not cause a visible change in turbidity, color, or cause visible oil sheen in the receiving water, and discharges shall not cause or contribute to a violation of surface water quality standards (Chapter 173-201A WAC) or sediment management standards (Chapter 173-204 WAC) of the state of Washington and 40 CFR 131. Condition S1.A and the table on page 5 of the 2016 Permit establishes the following effluent limits that are applicable to Ash Grove: TSS maximum daily concentration of 30 mg/L; total copper average monthly concentration of 12.8 μg/L; total copper maximum daily oncentration of 21.7 μg/L; no visible sheen of oil & grease at any time; pH minimum of 6.0 standard units; and pH maximum of 9 standard units.

Ash Grove discharges stormwater that contains elevated levels of TSS and copper in excess of the corresponding numeric effluent limitation, as indicated in the table of effluent limitation violations below. Ash Grove also discharges stormwater at pH levels in violation of the corresponding numeric effluent limitation, as indicated in the table of effluent limitation violations below. Each and every one of these discharges is a separate violation of the 2016 Permit and occurred on dates within the identified time periods known to Ash Grove. These violations are continuing or likely to recur. Soundkeeper hereby provides notice of its intent to sue Ash Grove for all numeric effluent limit violations in the past five years, including those listed below.

1.      Condition S1.A of the 2016 Permit establishes the effluent limitation for the maximum daily concenitration of TSS as 30 mg/L.  Ash Grove has violated this limitation:

| Date of Violation | TSS (daily concentration) (mg/L): |
|---|---|
| 11/2018 | 11 |
| 3/2019 | 11 |

2.      Condition S1.A of the 2016 Permit establishes effluent limitation for average monthly concentration of total copper of 12.8 μg/L.  Ash Grove has violated this limitation:

| Date of Violation | Copper (avg monthly) (μg/L) |
|---|---|
| 3/2019 | 13.4 |
| 6/2019 | 33.8 |
| 11/2019 | 29.2 |

3.      Condition S1.A of the 2016 Permit establishes the effluent limitation for the maximum daily concentration of total copper of 21.7 μg/L.  Ash Grove has violated this limitation:

| Date of Violation | Copper (max daily) (µg/L) |
|---|---|
| 6/2019 | 33.8 |
| 9/2019 | 21.6 |
| 11/2019 | 29.2 |

4. Condition S1.A of the 2016 Permit establishes the effluent limitation for pH minimum of 6.0 standard units and pH maximum of 9 standard units. Any excursions below 5.0 and above 10.0 at any time are considered violations of this permit. Ash Grove has violated this limitation:

| Date of Violation | pH |
|---|---|
| 11/2018 | 3.17/7.89 |

## II.   Stormwater Pollution Prevention Plan (SWPPP) Violations.

Ash Grove is in violation of the Permits' SWPPP provisions as follows:

1.   Condition S10.A of the 2010 Permit and Condition S9.A of the 2016 Permit require Ash Grove to update, implement, and comply with a SWPPP as specified. The SWPPP must be consistent with the Stormwater Management Manual for Western Washington ("SWMMWW"), available at https://ecology.wa.gov/Regulations-Permits/Guidance-technical-assistance/Stormwater-permittee-guidance-resources/Stormwater-manuals. Ash Grove has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with the Permits' requirements and/or with the SWMMWW, has not been fully implemented, and has not been updated as necessary.

2.   Condition S10.A.5 of the 2010 Permit and Condition S9.A.5 of the 2016 Permit require the SWPPP to include an assessment and description of existing and potential pollutant sources and a description of the operation, source-control, sediment control, and if necessary, treatment BMPs as well as an implementation schedule. Ash Grove has violated these requirements of the Permits each and every day during the last five years and continues to violate them as it has failed to prepare and/or implement a SWPPP that adequately describes and/or includes the required elements.

3.   Condition S.10.A.6 of the 2010 Permit and Condition S9.A.6 of the 2016 Permit requires Ash Grove to implement BMPs identified in the approved Engineering Report including, at a minimum: training for truck drivers on truck cleaning practices so materials are not tracked throughout the facility; maintenance of the truck was facility; proper disposal of truck wash wastewater; use of dust abatement methods to control fugitive dust emission and use of additional BMPs such as high efficiency sweeping and capture, reuse of dust abatement water/stormwater in cement production; scheduling stormwater system preventative maintenance program during the year and especially with a high priority before the heavy rain season; holding the annual refresher training for the yard crew and operations at the time preventative maintenance inspections are conducted; and mechanically cleaning the storm drains catch basins

to maintain the drains in the system. Ash Grove has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP does not include required source control BMPs identified in the approved Engineering Report.

4.   Condition S10.B of the 2010 Permit and Condition S9.B of the 2016 Permit require the SWPPP to include source control BMPs as necessary to achieve all known, available, and reasonable methods of prevention, control, and treatment ("AKART") and compliance with the stormwater discharge limits in Condition S1 of the Permits. Ash Grove has violated these requirements of the Permits each and every day during the last five years and continues to violate them because it has failed to prepare and/or implement a SWPPP that includes AKART BMPs and/or BMPs necessary to comply with the stormwater discharge limits in Condition S1 of the Permits.

5.   Condition S10.B.1 of the 2010 Permit and Condition S9.B.1 of the 2016 Permit require the SWPPP to include, at a minimum, source control BMPs for each of the following: fueling at dedicated stations; loading and unloading areas; washing or steam cleaning vehicles/equipment; dust control; stabilized entrances and parking areas; storage or transfer of solid raw materials, by-products, or finished products; and vehicle and equipment maintenance. These provisions of the Permits also require that coal stockpile and storage areas along the Duwamish River shall be void of gaps to prevent direct flow of stormwater discharges from these areas to the Duwamish River; the pathway of stormwater discharges from the coal pile is inspected and any stormwater discharge to the Duwamish is reported to Ecology; the coal pile area is swept daily; and the height of the coal pile is controlled. Ash Grove has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP does not include required source control BMPs identified by the Permits, required to achieve AKART, and/or required to comply with the stormwater discharge limits of Condition S1 of the Permits. These violations include but are not limited to Ash Grove's failure to implement source control BMPs such as Ash Grove's failure to prevent discharges of solid material and dust directly to the Duwamish River from its docks, wharfs, conveyors, and/or the mechanisms used to transfer materials to and from vessels; and failure to prevent stormwater discharges from the coal pile from reaching the Duwamish River.

6.   Conditions S10.B.2 and S10.B.3 of the 2010 Permit and Conditions S9.B.2 and S9.B.3 of the 2016 Permit require the SWPPP to include runoff conveyance and treatment BMPs as necessary to achieve AKART and compliance with the stormwater discharge limits as well as to prevent sedimentation.  These include but are not limited to: daily sweeping or sweeping as often as necessary to keep paved areas clean; constructing and maintaining sediment traps, berms, or other means to minimize fine material deposition to catch basins; protecting properties adjacent to the project from sedimentation related to the facility; and constructing and maintaining sediment traps, barriers, and other BMPs intended to trap sediment on-site. Ash Grove has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP does not include required runoff conveyance and treatment BMPs identified by the Permits as required to achieve AKART, comply with the stormwater discharge limits of Condition S1 of the Permits, and/or prevent sedimentation.

7.   Condition S10.B.4 of the 2010 Permit and Condition S9.B.4 of the 2016 Permit require Ash Grove to conduct stormwater inspections each week. The inspections must be conducted by the personnel named in the SWPPP and must include observations for the presence of floating materials, suspended solids, oil and grease, discoloration, turbidity, odor, etc., in the conveyance systems including weirs and outfalls. Whenever feasible, the inspection must be conducted during a rainfall event adequate in intensity and duration to verify that: the description of potential pollutant sources required under the Permits is accurate and the controls to reduce pollutants in stormwater discharges associated with industrial activity identified in the SWPPP are implemented and adequate. Ash Grove has violated these requirements of the Permits every week of the last five years and continues to violate them because it does not conduct weekly inspections and/or does not conduct weekly inspections during rainfall events of adequate intensity.

8.   Condition S10.B.5 of the 2010 Permit and Condition S9.B.5 of the 2016 Permit require Ash Grove to manage raw materials in a way that prevents stormwater contamination and is consistent with the SWMMWW. Ash Grove must: contain and cover pollution causing materials and chemicals such as fuels, oils, lubricants, solvents, degreasers, petroleum products and any others to prevent migration into the stormwater system; contain petroleum-contaminated soils (PCS) that fail to meet the most protective MTCA Method 'A' treatment levels [WAC 173-340-740(2)] so as to prevent leaching of pollutants to surface waters; cover, contain, and store cement in silos; cover and contain admixtures; cover and contain raw material piles such as coal, iron ore, limestone and other raw materials; and contain contaminated slag materials from blasting at shipyards so as to prevent leaching of pollutants to surface waters. Ash Grove has violated these conditions each and every day during the last five years and continues to violate them because Ash Grove does not manage raw materials in a way to prevent stormwater contamination, in a manner that is consistent with the SWMMWW, and/or in a manner consistent with the requirements of the Permits.

9.   Condition S10.C of the 2010 and Condition S9.C of the 2016 Permit require Ash Grove to: inspect all on-site sediment control facilities (including catch basins) and BMPs once a week during the wet season (October 1 – April 30) and maintain a file containing a log of observations as part of the SWPPP. Ash Grove is in violation of these requirements because over the past five years it has not conducted the required weekly inspections during the wet season and has not maintained a file containing a log of observations as part of the SWPPP.

10.   Condition S10.D of the 2010 Permit and Condition S9.D of the 2016 Permit require Ash Grove to prepare and retain each inspection report as part of the SWPPP and require that each report summarize: the scope of the inspection; personnel conducting the inspection; the date(s) of the inspection; major observations relating to the implementation of the SWPPP; and any actions taken as a result of the inspection. The report must be signed in accordance with Condition G1. Ash Grove is in violation of these requirements because during the last five years it has failed to conduct each of the requisite inspections, failed to prepare and retain each inspection report, failed to include the requisite information in each inspection report, and failed to make the requisite certifications of each report.

## III.    Monitoring and Reporting Violations.

Condition S3.A.8 of the 2016 Permit requires Ash Grove to submit monthly discharge monitoring reports (DMRs) by the 28th day of the following month and quarterly DMRs by the 28th of the month following the monitoring period.  Ash Grove has violated these conditions by failing to submit a monthly DMR within the time prescribed for December 2017 and February 2019 and failing to submit a quarterly DMR within the time prescribed for the fourth quarter of 2017.

## IV.    Violations of the Recordkeeping Requirements.

### i.    *Failure to Retain Records*.

Condition S3.B of the 2010 Permit and Condition S3.C of the 2016 Permit require Ash Grove to retain records of all monitoring information for a minimum of three years. Upon information and belief, Ash Grove is in violation of these conditions because it has failed to retain all monitoring records for a minimum of three years.

### ii.    *Failure to Record Information.*

Condition S3.C of the 2010 Permit and Condition S3.D of the 2016 Permit requires Ash Grove to record and retain specified information for each stormwater sample taken, including the date, exact place, method, and time of sampling, the individual who performed the sampling, the dates the analyses were performed, the individual who performed the analyses, the analytical methods used, and the results of all analyses.  Upon information and belief, Ash Grove is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

## V.    Direct Discharges.

### A.    Illicit Discharges

Condition S3.E of the 2010 Permit requires Ash Grove to immediately take action to stop, contain, and cleanup any illicit discharges contributing to noncompliance and to institute additional source control actions and BMPs as necessary to control the noncompliance and correct the problem. Condition S3.F.1 of the 2016 Permit requires Ash Grove to immediately take action to stop, contain, and cleanup unauthorized discharges or otherwise stop the noncompliance and correct the problem. In addition, Condition S10.B.5 of the 2010 Permit and Condition S9.B.5 of the 2016 Permit require Ash Grove to manage raw materials to prevent stormwater contamination. Condition S6 of the 2010 Permit and Condition S5 of the 2016 Permit require Ash Grove to handle and dispose of all solid waste material in such a manner as to prevent its entry into state ground or surface water. And finally, Condition S9 of the 2010 Permit and Condition S8 of the 2016 Permit require the facility to submit and implement a spill control

plan to prevent materials used (including cement dust and chitosan acetate) and/or stored on-site from becoming pollutants or cause pollution upon reaching state's waters.

The 2010 Permit Fact Sheet notes that this facility has potential to cause sediment impacts from loading and unloading materials at the docks, as well as storage of raw materials near the banks.  In Appendix D to the 2010 Permit Fact Sheet, Ecology confirms, "Ash Grove facility in Seattle does have runoff from the dock area that may potentially affect the sediment." The 2016 Permit Fact Sheet states, "The facility must not allow material to enter surface waters during dock loading/unloading." Ecology's Permit Fact Sheets for the 2010 and 2016 Permits state the "permit does not authorize discharge of the non-reported pollutants. The facility must notify Ecology if significant changes occur in any constituent [40 CFR 122.42(a)]. Until Ecology modifies the permit to reflect additional discharge of pollutants, a permitted facility could be violating its permit."

Ash Grove discharges materials from the overwater portions of the facility including the docks, conveyors and associated machinery, and wharf areas directly and via stormwater discharges to the Duwamish River in violation of these Permit conditions.  The materials being discharged from these areas may include but are not limited to raw materials, dirt, dust, solid waste, petroleum coke, coal, smelter slag, vanillin black liquor solids, fly ash, crushed limestone, clay, sand, gravel, and iron ore. Ash Grove has directly discharged these pollutants  to the Duwamish River in violation of their permit each and every time it has loaded or unloaded materials from a vessel or barge over the last five years (which dates are known to Ash Grove), and these discharges are reasonably likely to continue to occur. The over water portions of the facility from which these illicit discharges occur are circled in red in the following aerial image.



**B.     Unpermitted Discharges**

The Permits authorize only the discharges of stormwater and specific pollutants contained in stormwater.  Defendant does not possess and has never possessed an NPDES permit for its non-stormwater direct discharges of any other pollutant to the Duwamish River. The point sources of illicit discharges of pollutants at Ash Groves's facility include the equipment and mechanisms used to load and offload materials from barges and vessels; the conveyor belt used to load and offload materials from ships and transfer materials around the facility; as well as the docks, wharf, and facility itself.  The materials being discharged from these areas include but are not limited to raw materials, dust, solid waste, petroleum coke, coal, smelter slag, vanillin black liquor solids, fly ash, crushed limestone, clay, sand, gravel, and iron ore.

Ash Grove discharges materials from the overwater portions of the facility including the docks, conveyors and associated machinery, and wharf areas directly to the Duwamish River in violation of the Clean Water Act.  These point source discharges violate the Clean Water Act § 301(a), 33 U.S.C. § 1311(a), prohibition on pollutant discharges because they are not authorized by a NPDES permit.  Ash Grove has generated discharges of materials to the Duwamish River each and every time it has loaded or unloaded materials from a vessel or barge over the last five years (which dates are known to Ash Grove), and these discharges are reasonably likely to continue to occur. The over water portions of the facility from which these discharges occur are encircled in red in the aerial image above.

**C.     Violations of Sediment Quality Standards**

The portion of the Duwamish River directly adjacent to the facility's docks and wharf does not meet water quality standards (including sediment quality standards) for bioassay and is included on the state's "303(d) list" of impaired water bodies. Ash Grove's direct discharges of materials cause and/or contribute to violations of water quality standards (including sediment quality standards) for sediment bioassay, violations of aquatic life criteria, violations of the secondary contact recreational criteria, violations of the wildlife habitat criteria, violations of the harvesting criteria, violations of the commerce and navigation criteria, violations of the boating criteria, as well as violations of the aesthetic criteria due to the presence of turbid and toxic discharges from the facility that offend the senses of sight, smell and touch. *See* WAC 173-201A-210(1)(d), (1)(e), (1)(a)(iii), (3), (4), WAC 173-204-320(f), WAC 173-201A-240, WAC 173-201A-602, WAC 173-201A-610, WAC 173-201A-612, and WAC 173-204 Part III.

## VI.     CONCLUSION.

The violations described above are based on the information currently available to Soundkeeper.  These violations are ongoing in that they continue or are likely to recur. Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $37,500 per day for each violation that occurred through November 2, 2015, and $55,800 per day for each violation that occurred thereafter.  In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this Notice of Intent to Sue sufficiently states grounds for filing suit.  We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Ash Grove under Section 505 of the CWA, 33 U.S.C. § 1365, for violations.

Sincerely,

Smith & Lowney, PLLC

By: _____
Richard Smith
Alyssa Englebrecht
Meredith Crafton

cc:   Andrew Wheeler, Administrator, U.S. EPA
      Chris Hladick, Region 10 Administrator, U.S. EPA
      Laura Watson, Director, Washington Department of Ecology
      Registered Agent, Corporation Service Company, 300 Deschutes Way SW Ste 208 MC-CSC1, Tumwater, Wa, 98501, United States